UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MSP RECOVERY CLAIMS, SERIES LLC,
*a Delaware limited liability company*, and
SERIES 16-08-483, *a series of*
*MSP Recovery Claims, Series LLC*,

                                  Plaintiffs,

   vs.                                            6:19-CV-00211
                                                      (MAD/TWD)
NEW YORK CENTRAL MUTUAL FIRE
INSURANCE COMPANY, *a New York*
*corporation*,

                                  Defendant.
_____

APPEARANCES:                               OF COUNSEL:

**THE FERRARO LAW FIRM**              **JAMES L. FERRARO, ESQ.**
600 Brickell Avenue, Suite 3800
Miami, Florida 33131
Attorneys for Plaintiffs

**HURWITZ, FINE LAW FIRM**           **MICHAEL F. PERLEY, ESQ.**
1300 Liberty Building                       **AMBER E. STORR, ESQ.**
Buffalo, New York 14202
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

    This case is one of dozens brought by Plaintiffs and their affiliates against insurance companies across the nation in an attempt to collect funds allegedly owed to Medicare Advantage Organizations ("MAO") under the Medicare Secondary Payer Act ("MSPA").[1] *See* Dkt. No. 26-5

---

[1] MAOs are private companies that offer Medicare Advantage plans as an alternative to traditional Medicare. *See* https://www.medicare.gov.

at 10 n.1 (collecting cases). Plaintiffs MSP Recovery Claims, Series LLC, and Series 16-08-483 commenced this putative class action on November 7, 2018, alleging that Defendant New York Central Mutual Fire Insurance Company violated the MSPA by failing to reimburse Health Insurance Plan Of Greater New York ("HIPGNY") for conditional payments it made as an MAO on behalf of persons insured by Defendant. *See* Dkt. No. 1 at ¶ 1. Defendant has moved to dismiss the Complaint pursuant to 12(b)(1) for lack of subject-matter jurisdiction and 12(b)(6) for failure to state a claim. *See* Dkt. No. 26 at 1. For the following reasons, Defendant's motion is granted and the case is dismissed for lack of subject-matter jurisdiction.

## II. BACKGROUND

**A.    Legal Background**

*1. The Medicare Secondary Payer Act*

"[T]he MSP Act requires that entities known as 'primary payers,' such as insurance companies, must reimburse Medicare (or, as in this case, a Medicare Advantage Organization ('MAO')) for payments for medical items and services that were covered by the insurance company's policy." *MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.*, No. 6:18-CV-1458, 2019 WL 1490531, *1 (M.D. Fla. Apr. 4, 2019); *see also* 42 U.S.C. § 1395y(b)(2)(A)(ii) (precluding Medicare from paying for items or services for which "payment has been made or can reasonably be expected to be made under . . . an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance"). Under the MSPA, an MAO can make a "conditional payment" for medical items and services if "a primary plan . . . has not made or cannot reasonably be expected to make payment with respect to such item or service promptly," but the primary plan must reimburse the MAO for that payment "if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or

2

service." *See* 42 USC § 1395y(b)(2)(B). The MSPA creates a private right of action for double damages against primary payers that fail to reimburse the MAO for covered expenses. *See* 42 USC § 1395y(b)(3)(A).

### *2. New York State No Fault Regulations*

Under New York State's "No Fault Regulations," before suing an automobile insurance company for personal injuries, the insured party must provide to its insurer (1) written notice setting forth the details of the accident, (2) written proof of health service expenses incurred, no later than 45 days after the services are rendered, and (3) written proof of work loss benefits and other necessary expenses incurred, no later than 90 days after the expenses are incurred. *See* 11 N.Y.C.R.R. 65-1.1(d). Additionally, the insurer can require the insured party to (1) execute a written proof of claim under oath, (2) submit to reasonable examinations under oath by any person named by the insurer, (3) provide authorization so the insurer can obtain his or her medical records, and (4) provide any other pertinent information that may assist the insurer in determining the amount due and payable. *Id.*

**B.    Facts**

### *1. The R.L. Claim*

Plaintiffs have allegedly developed a software that "captures data from different sources to . . . identify a Medicare eligible person for whom primary medical payments should have been made, along with any information stored as to potential class members." *See* Dkt. No. 1 at ¶¶ 37, 38. Based on that information, Plaintiffs allege that Defendant, who is a no-fault insurer, has "repeatedly failed to provide primary payment, or to reimburse secondary payments made by Plaintiffs' assignors and Class Members, . . . for medical expenses resulting from injuries sustained in automobile accidents." *See id.* at ¶ 2.

3

As a representative claim to this putative class action, the Complaint refers to an individual, R.L., who was allegedly enrolled in a Medicare Advantage plan issued and administered by HIPGNY. *See id.* at ¶ 7. According to Plaintiffs, R.L. sustained several injuries in an accident on September 28, 2014, which required "medical items and services" as listed in the Complaint. *See id.* at ¶¶ 8, 9. Plaintiffs allege that HIPGNY was billed $26,853.67 for R.L.'s accident-related medical expenses, of which HIPGNY paid $5,232.23. *See id.* at ¶ 10. Plaintiffs claim that, as the as the "primary payer by virtue of a no-fault policy that it issued to R.L.," Defendant is liable for the total amount billed to HIPGNY, so Plaintiffs seek double the amount of $26,853.67 as damages for this particular claim. *See id.* at ¶¶ 10, 11; *see also* 42 C.F.R. § 411.31. Finally, Plaintiffs claim that Defendant reported to the Centers for Medicare and Medicaid Services ("CMS") that it was the primary payer for R.L., and "even reported information regarding the accident, the name of the reporting entity, and the type of insurance policy involved." *See* Dkt. No. 1 at ¶ 11. Plaintiffs claim to have attached that report as Exhibit C. *See id.*; Dkt. No. 1-3 at 2.

### 2. *The Assignments*

Plaintiffs allege that they have standing to bring this action on behalf of HIPGNY and the alleged class members based on several assignments. *See* Dkt. No. 1 at ¶ 13. First, the Complaint alleges that on March 20, 2018, HIPGNY "irrevocably assigned all rights to recover conditional payments made on behalf of its Enrollees to Series 16-08-483, a designated series of MSP Recovery Claims, Series LLC and to MSP Recovery, LLC, a Florida Limited Liability Company," (hereinafter, the "March Assignment"). *See id.* at ¶ 14. Then, on April 4, 2018, MSP Recovery, LLC allegedly assigned the rights in had acquired in the March Assignment to Series

4

16-08-483 (hereinafter, the "April Assignment"). *See id.* at ¶ 15. Plaintiffs also allege that HIPGNY ratified and approved the April Assignment. *See id.*

In support of these allegations, Plaintiffs attach two agreements to the Complaint.[2] *See* Dkt. Nos. 1-4, 1-5. The first agreement, which is dated April 4, 2018 and attached as Exhibit D1, appears to be the contract effectuating the April Assignment. *See* Dkt. No. 1-4 at 2-3. That agreement assigns the rights that MSP Recovery, LLC had acquired in the March Assignment to Series 16-08-483. *See id.* The second agreement, which is attached as Exhibit D2, irrevocably assigns to Series 16-08-483 and MSP Recovery, LLC, "any and all of [HIPGNY's] right[s], title, ownership and interest in and to all Assigned Medicare Recovery Claims" and excludes from the assignment "Assignor Retained Claims." *See* Dkt. No. 1-5 at 3. The agreement defines Assigned Medicare Recovery Claims as "all right[s], title, interest in and ownership of Medicare Recovery Claims . . . [excluding the Assignor Retained Claims] . . . related to Medicare Health Care Services that were rendered and paid for by Assignor" from September 29, 2011 through September 29, 2017. *See id.* at 2-3. The Assignor Retained Claims are defined as "Medicare Recovery Claims that can be asserted against Assignor's members, enrollees and/or contracted providers, and . . . Medicare Recovery Claims that, as of the Effective Date, have been assigned to and/or are being pursued by other recovery vendors." *See id.* The agreement states that the assignment is effective as of March 20, 2018, but was signed solely by Michael Palmateer, the Chief Administrative Officer of HIPGNY, on July 27, 2018. *See id.* at 3. In the Complaint, Plaintiffs claim that this agreement represents the March Assignment. *See* Dkt. No. 1 at ¶ 14.

---

[2] In deciding a motion to dismiss, the Court may consider documents attached as exhibits to the complaint or incorporated by reference in the complaint, documents that are integral to a plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken. *See Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (citations omitted).

### *3. The Coordination of Benefits Letter*

Plaintiffs allege that, on June 19, 2018, they sent Defendant a letter informing it of the assignments and requesting "additional information related to reimbursements owed by Defendant to Plaintiffs' assignors," (hereinafter, the "Coordination of Benefits Letter"), which they attached to the Complaint as Exhibit E. *See id.* at ¶ 16; Dkt. No. 1-6 at 2-5. The Coordination of Benefits Letter states that, "pursuant to an approved assignment agreement . . . the Medicare Secondary Payer or at risk provider owns all reimbursement, recovery claims and subrogation rights in connection with Medicare health benefit payments made for and on behalf of the insured/claimant/beneficiary referenced above." *See* Dkt. No. 1-6 at 3. The names of the insured party and beneficiary are redacted from the letter. *See id.* The letter also asks Defendant for information about the insured party, the insurance policy, Defendant's liability limits, and any evidence about the incident, claim, or settlements. *See id.* at 5. Plaintiffs claim that "Defendant was required to provide the requested information, but has failed to do so." *See* Dkt. No. 1 at ¶ 16. Finally, Plaintiffs argue that the letter, along with Defendant's report to CMS, shows that "Defendant had actual and constructive knowledge that it was the primary payer for R.L.'s accident-related expenses." *See id.* at ¶ 17.

### C.     **Procedural History**

Plaintiffs initiated this action in the Southern District of New York on November 7, 2018, and the case was transferred to the Northern District of New York on February 20, 2019. *See* Dkt. Nos. 1, 15. On April 12, 2019, Defendant moved to dismiss the case for lack of subject matter jurisdiction and failure to state a claim. *See* Dkt. No. 26 at 1. Plaintiffs opposed that motion on May 20, 2019, and on May 24, 2019, Defendant filed its Reply. *See* Dkt. Nos. 37, 41.

### III.  DISCUSSION

A.      **Legal Standard**

"Article III, § 2, of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,' which restrict the authority of federal courts to resolving the legal rights of litigants in actual controversies." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (internal quotation omitted) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982)). "As an incident to the elaboration of this bedrock requirement," a plaintiff seeking to maintain an action in federal court is "always required" to have standing. *Valley Forge Christian Coll.*, 454 U.S. at 471; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Thus, standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Kiryas Joel Alliance v. Vill. of Kiryas Joel*, 495 Fed. Appx. 183, 188 (2d Cir. 2012).

"To demonstrate standing, a plaintiff must have 'alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction.'" *Salazar v. Buono*, 559 U.S. 700, 711 (2010) (quoting *Horne v. Flores*, 557 U.S. 433, 445 (2009)) (emphasis omitted). As the Supreme Court established in *Lujan*, "the irreducible constitutional minimum of standing contains three elements":

> First, the plaintiff must have suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

504 U.S. at 560 (internal citations and quotation marks omitted). The "[s]tanding doctrine functions to ensure, among other things, that the scarce resources of the federal courts are devoted

to those disputes in which the parties have a concrete stake." *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 191 (2000).

The "assignee of a claim has standing to assert the injury in fact suffered by the assignor." *Vt. Agency of Nat. Res. v. U.S. ex rel Stevens*, 529 U.S. 765, 773 (2000). "Typically, the assignee, obtaining the assignment in exchange for some consideration running from it to the assignor, replaces the assignor with respect to the claim or the portion of the claim assigned, and thus stands in the assignor's stead with respect to both injury and remedy." *Connecticut v. Physicians Health Servs. Of Connecticut, Inc.*, 287 F.3d 110, 117 (2d Cir. 2002); *see also Furlong v. Shalala*, 156 F.3d 384, 392 (2d Cir. 1998) ("Under common law, an assignee steps into the assignor's shoes and acquires whatever rights the latter had") (citation omitted).

"[I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012); *see also Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154, 160 (2d Cir. 2014) (discussing *NECA-IBEW* and the "murky line between traditional Article III standing and so-called 'class standing'").

Where standing is challenged at the pleadings stage, the court must "'accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *Lowell v. Lyft, Inc.*, 352 F. Supp. 3d 248, 255 (S.D.N.Y. 2018) (quoting *United States v. Vazquez*, 145 F.3d 74, 81 (2d Cir. 1998)). To survive a 12(b)(1) motion to

dismiss, the pleadings "must allege facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue."

*Amidax Trading Grp. v. S.W.I.F.T.*, 671 F.3d 140, 145 (2d Cir. 2011). However, the allegations "need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury." *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003).

**B.     Application**

### *1. Inconsistencies in Plaintiffs' Arguments*

Since Defendant brings a facial challenge to Plaintiffs' standing based on the allegations in the Complaint, for purposes of this motion, the Court must accept as true all material factual allegations in the Complaint and draw all reasonable inferences in favor of Plaintiffs. *See Lowell*, 352 F. Supp. 3d at 255. However, before this Court can analyze the arguments raised in the Motion to Dismiss, it feels compelled to address several inconsistencies in the Complaint, the Exhibits attached to the Complaint, and Plaintiffs' Opposition to the Motion to Dismiss.

First, in the Complaint, Plaintiffs allege that Exhibit D1 is a copy of an agreement effectuating the March Assignment (hereinafter, the "March Assignment Agreement"). *See* Dkt. No. 1 at ¶ 14. Plaintiffs mistakenly attached the wrong exhibit cover sheets, and later clarified that "Exhibit D-1, referenced in paragraph 14, truly refers to Exhibit D-2." *See* Dkt. No. 37 at 7 n.2. While that mistake is not very concerning, the Court is troubled by the fact that Exhibit D2 is the agreement that was signed by Michael Palmateer - and only Michael Palmateer - on July 27, 2018. *See* Dkt. No. 1-5 at 3. After Defendant pointed out the discrepancy in its Motion to Dismiss, *see* Dkt. No. 26-5 at 21-22, Plaintiffs responded that Exhibit D2 is a *nunc pro tunc* assignment which ratified the March 20, 2018 assignment, and that they "didn't file the March 20 assignment in this case . . . [because] . . . given that the material terms of the assignments are all

9

but identical - doing so would have been superfluous," *see* Dkt. No. 37 at 12. In other words, although in the Complaint Plaintiffs claimed that Exhibit D2 is the March Assignment Agreement, *see* Dkt. No. 1 at ¶ 14, Plaintiffs now claim that it is not, *see* Dkt. No. 37 at 12.[3]

Second, despite the allegations in the Complaint that Plaintiffs issued the Coordination of Benefits Letter to Defendant on June 19, 2018, *see* Dkt. No. 1 at ¶ 16, Exhibit E shows that the letter was actually issued by MSP Recovery, LLC, who is not a party to this action, *see* Dkt. No. 1-6 at 2-5. Moreover, the letter suggests that MSP Recovery, LLC owns the rights to HIPGNY's claim regarding R.L. *See id.* at 3. According to the Complaint and its Exhibits, however, Series 16-08-483 owned the rights to HIPGNY's claims by June 19, 2018. *See* Dkt. No. 1 at ¶¶ 14, 15; Dkt. No. 1-5 at 2 (assigning HIPGNY's rights to MSP Recovery, LLC and Series 16-08-483 on March 20, 2018); Dkt. No. 1-4 at 2 (assigning MSP Recovery, LLC's rights from the March Assignment to Series 16-08-483 on April 4, 2018). This discrepancy suggests that the March Assignment never actually existed, and that Plaintiffs created the *nunc pro tunc* assignment after-the-fact to validate the April 4, 2018 assignment, which claimed to assign the rights that MSP Recovery, LLC had acquired on March 20, 2018. Lastly, the insured party's name is redacted in the letter, so the Court is expected to trust Plaintiffs' assertion that this letter actually involved the R.L. claim. *See* Dkt. No. 1-6 at 3.

---

[3] Plaintiffs and their affiliates have been admonished by other courts for similar conduct. *See, e.g.*, *MSP Recovery Claims, Series LLC v. USAA Gen. Indem. Co.*, No. 18-CV-21626, 2018 WL 5112998, *10 (S.D. Fla. Oct. 19, 2018) ("What Plaintiff has concocted with the several new documents [including a *nunc pro tunc* assignment] is a brazen attempt to cure the deficiencies for which other courts have previously sanctioned Plaintiff and its counsel"); *see also MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.*, No. 18-CV-1458, 2019 WL 1490531, *3 (M.D. Fla. Apr. 4, 2019) (refusing to consider a *nunc pro tunc* agreement as establishing the parties' intent to assign the insurer's rights under the MSPA to MSP Recovery Claims, Series LLC where the assignment agreement was unambiguous).

10

Finally, the Court has some concerns about Plaintiffs' other exhibits. Exhibits A, B, C, and F, although allegedly from different sources, are all spreadsheets with similar formatting, the same type of font, and no markings on the exhibits to trace them to their sources. *See* Dkt. Nos. 1-1, 1-2, 1-3, 1-7. For example, Plaintiffs claim Exhibit C is "a true and correct copy of Defendant's report [about the R.L. claim] to CMS," *see* Dkt. No. 1 at ¶ 11, but nothing on the actual exhibit confirms its source, *see* Dkt. No. 1-3 at 2. In fact, the formatting on Exhibit C looks very similar to Exhibit B, which is a list created by Plaintiffs of "at least 139 [alleged] instances [that Plaintiffs had identified] where Defendant admitted it was to provide primary payment on behalf of Enrollees." *See* Dkt. No. 1-2 at 2-5.

Thus, the Court is faced with a messy Complaint, improper exhibits, and Plaintiffs' inconsistent arguments. Although the Court will do its best to construe the Complaint in Plaintiffs' favor, *see Lowell*, 352 F. Supp. 3d at 255, the Complaint will only survive if, despite these inconsistencies, Plaintiffs have "allege[d] facts that affirmatively and plausibly suggest that [Plaintiffs] ha[ve] standing to sue." *Amidax*, 671 F.3d at 145.

### *2. Standing*

In order for Plaintiffs to have standing in this putative class action, the Complaint must plausibly allege that (1) HIPGNY personally suffered some actual injury as a result of illegal conduct by Defendant, *see NECA-IBEW*, 693 F.3d at 162, and (2) Plaintiffs have been assigned the right to sue by HIPGNY, *see Vt. Agency of Nat. Res.*, 529 U.S. at 773. Thus, the first step is for the Court to determine whether HIPGNY was injured by Defendant in the representative R.L. claim.

In reviewing a written contract, such as an assignment agreement, "a trial court's primary objective is to give effect to the intent of the parties as revealed by the language they chose to

use." *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992) (citing *Slatt v. Slatt*, 64 N.Y.2d 966, 967 (1985)). "When the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving practical interpretation to the language employed and the parties' reasonable expectations." *131 Heartland Blvd. Corp. v. C.J. Jon Corp.*, 921 N.Y.S.2d 94, 94 (2d Dep't 2011) (citations omitted). Language is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Seiden Associates, Inc.*, 959 F.2d at 428 (quotations omitted).

After carefully reviewing the Complaint and its exhibits, the Court finds that Plaintiffs have not properly alleged that they have been assigned the right to sue based on the R.L. claim. The Complaint broadly alleges that HIPGNY assigned certain rights to MSP Recovery, LLC and Series 16-08-483, *see* Dkt. No. 1 at ¶¶ 13-15, but it does not actually allege whether R.L.'s claim was included in that assignment. Specifically, the Complaint alleges that the March Assignment "irrevocably assigned all rights to recover conditional payments made on behalf of its Enrollees to Series 16-08-483, a designated series of MSP Recovery Claims, Series LLC and to MSP Recovery, LLC, a Florida Limited Liability Company." *See id.* at ¶ 14. However, Exhibit D2, which Plaintiffs originally claimed was the March Assignment Agreement, shows that the agreement assigned only the Assigned Medicare Recovery Claims, and excluded the Assignor Retained Claims from the assignment. *See* Dkt. No. 1-5 at 2. There is nothing in the record to show whether the R.L. claim is one of the "Assigned Medicare Recovery Claims" or one of the "Assignor Retained Claims." Thus, the Court agrees with Defendant that "[t]here is no way to

identify whether the R.L. claim - the exemplar claim here - has been assigned." *See* Dkt. No. 26-5 at 20. That ambiguity is fatal to Plaintiffs' claim that they have standing, and the case must be dismissed for lack of jurisdiction.

In the Opposition to the Motion to Dismiss, Plaintiffs argue that HIPGNY "assigned all claims it has under the MSP Act from September 29, 2011 to September 29, 2017." *See* Dkt. No. 37 at 11. As for the Assignor Retained Claims, Plaintiffs argue that the Court should make the "reasonable inference" that "before March 20, 2018, [HIPGNY] hadn't assigned to anyone claims against Defendant." *See id.* The Court disagrees with Plaintiffs' claim that this inference is "reasonable," or that the Court should reach that conclusion. In fact, despite Plaintiffs' contention that "[t]his is a reasonable inference because it is true," *see id.*, the most logical conclusion to draw from the existence of the Assignor Retained Claims provision is that such claims existed and needed to be excluded from the assignment.

The Court also notes that Plaintiff MSP Recovery Claims, Series LLC is not a party to any of the alleged assignments. The March Assignment allegedly transferred rights from HIPGNY to MSP Recovery, LLC and Series 16-08-483. *See* Dkt. No. 1 at ¶ 14. Exhibit D2 shows that the agreement that was signed on July 27, 2018 assigned rights to Series 16-08-483 and MSP Recovery, LLC, *see* Dkt. No. 1-5 at 2, and the April Assignment assigned rights from MSP Recovery, LLC to Series 16-08-483, *see* Dkt. No. 1-4 at 2. Nothing in the Complaint or its Exhibits suggests that MSP Recovery Claims, Series LLC received HIPGNY's right to sue under the MSPA. To the extent that Plaintiffs are arguing that MSP Recovery Claims, Series LLC has standing to sue because Series 16-08-483 is its Series, such an argument is an abuse of corporate form and has been rejected by another court considering these claims. *See USAA Gen. Indem. Co.*, 2018 WL 5112998, at *12 (dismissing the case with prejudice and holding that MSP

13

Recovery Claims, Series LLC could not sue on behalf of the Series that was purportedly assigned the right to sue because "[a] series entity is similar to a corporation with subsidiaries, and parent corporations lack standing to sue on behalf of their subsidiaries") (internal quotations and citations omitted).

Therefore, the Complaint must be dismissed because it fails to plausibly allege standing.

**B.      Dismissal Without Prejudice**

"[W]here a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54-55 (2d Cir. 2016); *see also Hernandez v. Conriv Realty Associates*, 182 F.3d 121, 123 (2d Cir. 1999) (holding that a federal court cannot dismiss a case with prejudice where there is no Article III standing).  This is because "[s]uch a dismissal is one for lack of subject matter jurisdiction, and without jurisdiction, the district court lacks the power to adjudicate the merits of the case." *See id.* (citing *Davis v. Federal Election Commission*, 554 U.S. 724, 732-33 (2008); *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998)) (other citations omitted). Accordingly, this case must be dismissed without prejudice.

This case is one of dozens of putative class action suits filed in federal courts across the United States by MSP Recovery Claims, Series LLC or its affiliates. *See* Dkt. No. 26-5 at 10 n.1 (collecting cases). Plaintiffs' strategy, it appears, is to throw their allegations into as many federal courts as possible and see what sticks. In each of these cases, Plaintiffs file deficient complaints, rely on courts to point out the problems, and then repeatedly amend their pleadings until they get it right. *See, e.g.*, *MSPA Claims 1, LLC v. Liberty Mut. Fire Ins. Co.*, 322 F. Supp. 3d 1273, 1275 n.1 (S.D. Fla. 2018) (dismissing the action with prejudice for lack of subject matter jurisdiction after the plaintiffs "had multiple opportunities to amend their complaint"); *MSP Recovery Claims,*

14

*Series LLC v. Auto-Owners Ins. Co.*, No. 1:17-CV-23841, 2018 WL 1953861, *6-7 (S.D. Fla. Apr. 25, 2018), *appeal dismissed sub nom. MSP Recovery Claims, Series LLC v. Ace Am. Ins. Co.*, No. 18-12139, 2018 WL 6132508 (11th Cir. Nov. 8, 2018) (dismissing the case with prejudice where MSP Recovery Claims, Series LLC failed to allege facts to show standing "[d]espite its fourteenth attempt at pleading its claims [across four consolidated actions]"); *see also MSP Recovery Claims, Series LLC v. Farmers Ins. Exch.*, No. 17-CV-02522, 2018 WL 5086623, *14 (C.D. Cal. Aug. 13, 2018) (finding standing after MSP Recovery Claims, Series LLC amended the complaint four times because "dismissing these actions at this juncture would be a 'needless formality,'" that "would likely result in plaintiffs simply re-filing in this district") (internal quotation omitted). Plaintiffs' tactics are a flagrant abuse of the legal system. A pleading is not meant to be a means by which a party can discover if they actually have a case. Rather, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) set forth clear standards that a pleading must meet in order to survive a motion to dismiss, and Plaintiffs must abide by those standards in any amended pleadings they choose to submit.

      Finally, the Court has some concern about the veracity of the allegations in the Complaint. In support of its Motion to Dismiss, Defendant submitted an affidavit from one if its Claims Examiners named Rhonda Brooker (hereinafter, the "Brooker Affidavit"). The Brooker Affidavit claims that (1) R.L. is not a policy holder of any policy with Defendant, (2) "[t]he incident involving R.L. reported by [Defendant] to CMS involved a potential for a claim by R.L. under another individual's homeowner's policy," and (3) Defendant never received a claim or demand about R.L. *See* Dkt. No. 26-4 at ¶¶ 5-7, 9. At this stage in the proceedings, the Court has accepted as true all well-pleaded facts in the Complaint, as it is required to do. *See Lowell*, 352 F. Supp. 3d at 255. However, Plaintiffs' history of untruthfulness is well-documented. *See, e.g.*,

*USAA Gen. Indem. Co.*, 2018 WL 5112998, at *13 ("In light of the ever-shifting allegations Plaintiff has presented in its four versions of its pleading, it is evident Plaintiff has played fast and loose with facts, corporate entities, and adverse judicial rulings"). Accordingly, Plaintiffs are warned not to commit fraud on the court, and Plaintiffs' attorneys are reminded of their duty of candor to the Court. *See Shangold v. Walt Disney Co.*, 275 Fed. Appx. 72, 75 (2d Cir. 2008) (affirming district court's dismissal of case after finding the plaintiffs had committed a fraud upon the court by fabricating evidence); *Interpreter Servs., Inc. v. BTB Techs., Inc.*, No. 10-CV-4007, 2011 WL 6935343, *5 (D.S.D. Dec. 29, 2011) (imposing Fed. R. Civ. P. 11 sanctions on an attorney who produced fake emails in discovery); *see also MSP Recovery Claims, Series LLC v. Travelers Cas. & Sur. Co.*, No. 17-CV-23628, 2018 WL 3599360, *4 (S.D. Fla. June 21, 2018) (reminding MSP Recovery Claims, Series LLC of its duty of candor to the Court, which included a duty not to submit "knowingly inaccurate" pleadings).

Nonetheless, because Plaintiffs do not have standing, the Complaint is dismissed without prejudice for lack of subject matter jurisdiction.

### IV. CONCLUSION

After careful review of the record, the Motion to Dismiss, and the applicable law, the Court hereby

**ORDERS** that Defendant's Motion to Dismiss (Dkt. No. 26-5) is **GRANTED**; and the Court further

**ORDERS** that the Complaint (Dkt. No. 1) is **DISMISSED without prejudice**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 5, 2019
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge